472 So.2d 340 (1985)
STATE of Louisiana, Plaintiff-Appellee,
v.
Michael J. TASSIN, Defendant-Appellant.
No. CR84-797.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1985.
*341 Kathrine Williamson, Small, Williamson, Brocato & Fournet, Alexandria, for defendant-appellant.
J. Edward Knoll, Dist. Atty., David LaFargue, Asst. Dist. Atty., Marksville, for plaintiff-appellee.
Before DOMENGEAUX, STOKER and DOUCET, JJ.
DOUCET, Judge.
This is an appeal from a conviction for manufacture and possession of a bomb.
On June 19, 1983, sixteen year old Shane Desselle brought a paper bag containing what appeared to be three bombs to Chief Earl Greenhouse of the Marksville Police Department, and stated that he had received them from the defendant. Approximately one month prior to the incident, Chief Greenhouse began to receive information from a confidential informant that the defendant was making explosive devices. On July 18, 1983, the confidential informant went to Chief Greenhouse' residence and told him that the defendant was manufacturing bombs and intended to destroy someone's car with them. The informant stated that the bombs were at the residence of Michael Tassin, located at 115 Overton Street, Marksville, Louisiana. The next day, Chief Greenhouse received the bag containing the bombs from Shane Desselle.
On July 20, 1983, Chief Greenhouse called Trooper Clifford Devereaux, a narcotics officer with the Louisiana State Police, and asked him to contact the State Police Bomb Squad. Trooper Stone, a technician and investigator with the Louisiana State Police Explosives Control Unit, was sent to examine the items in Chief Greenhouse's possession. He made a preliminary determination that they were homemade bombs. Shortly thereafter, a warrant to search the defendant's residence was issued by Judge Lee.
On July 20, 1984, at approximately 2:50 P.M., the search warrant was executed by Chief Greenhouse who was assisted by David Raynes, Jeff Stone, Clifford Devereaux *342 and Jim Pease of the State Police. During the course of the search, Chief Greenhouse seized two green "military type" time fuses, a zip-lock bag containing black residue later determined to be gunpowder, and one piece of PVC plastic pipe. Chief Greenhouse delivered these items to Trooper Devereaux, who delivered them to Trooper Stone. Forensic scientists at the State Police Crime Lab determined that the three homemade bombs contained the same kind of time fuses and gunpowder as those seized at the defendant's residence. Trooper Stone also determined that the seized PVC pipe could have been used to manufacture a bomb.
The defendant, Michael J. "Coon" Tassin, was charged by a bill of information with the crime of manufacture and possession of a bomb, a violation of La.R.S. 14:54.3. On May 7, 1984, the defendant waived his right to trial by jury. On May 10, 1984, the defendant was tried and found guilty as charged. At the sentencing hearing on June 28, 1984, the defendant pled guilty to being a habitual offender, third offense, under La.R.S. 15:529.1 and was sentenced to serve ten years at hard labor in the Department of Corrections. The defendant appeals. Only three of the defendant's assignments of error were briefed. Assignments of error which are not briefed are considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982); State v. Crawford, 441 So.2d 813 (La.App. 3rd Cir.1983). The three remaining assignments of error concern the sufficiency of the evidence. Therefore, we will consider them together.
The defendant contends that the trial court erred in denying the motion for directed verdict at the close of the State's case, in finding the defendant guilty as charged, and in denying his motion for new trial. The issue presented on appeal is whether the State established beyond a reasonable doubt every essential element of the offense charged.
La.R.S. 14:54.3 provides that:
"It shall be unlawful for any person without proper license as required by R.S. 40:1471.1 et seq. knowingly and intentionally to manufacture, possess or have under his control any bomb.
A bomb, for the purposes of this Section, is defined as an explosive compound or mixture with a detonator or initiator or both, but does not include small arms ammunition.
As used herein the term "explosive" means gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuses (other than electric circuit breakers), detonators, and other detonating agents, smokeless powders, and any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition1 by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion.
This section shall not apply to fireworks possessed within the meaning and contemplation of R.S. 51:650 et seq.
Whoever violates this Section shall be fined not more than ten thousand dollars or be imprisoned at hard labor for not more than twenty years or both.
Added by Acts 1974, No. 375, § 1. Amended by Acts 1979, No. 654, § 1."
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Duncan, 420 So.2d 1105 (La.1982). It is the role of the fact finder to weigh the respective credibilities of the witnesses. The appellate court should not second guess the credibility determinations of the trier of fact beyond the application of the sufficiency evaluations allowed under the Jackson standard of review. See State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983).
*343 At trial, testimony revealed that Shane Desselle, who was a friend of the defendant, drove to the defendant's residence on July 19, 1983. Mr. Desselle testified that when he arrived, the defendant told him that he had something to give him and they entered the residence. Mr. Desselle testified that, once inside, the defendant showed him a bag containing bombs. The defendant told Desselle that he would put it in Desselle's car. Mr. Desselle testified that he told the defendant he didn't want them but that the defendant placed the bombs on the rear floor board of his car in spite of his protest. Testimony indicated that the defendant wiped each bomb for fingerprints before he placed them in Desselle's car. Mr. Desselle testified that shortly after this incident, he brought the bag of bombs to Chief Earl Greenhouse, Marksville Police Department.
Mr. Desselle testified that on July 17, 1983, the defendant mentioned that he was interested in making some bombs, so he gave the defendant some gunpowder. Mr. Desselle testified that the defendant had mentioned, on a previous occasion, that he wanted to blow up three cars and that on July 19, 1983, the defendant stated that he wanted to "get rid of" Bobby Sherman, Fuzzy Bernard, and Pookie Francois.
Jason Conrad Falls, 13 years old, testified somewhat hesitantly that he had seen a pipe and some fuses on the counter in the defendant's residence. He testified that the fuses were not inside the pipe but that they were next to it. He also testified that he had noticed that one piece of pipe had black tape wrapped around it.
Kevin Pennington, 17 years old, testified that the defendant had mentioned that he intended to make a bomb. Pennington further testified that he had seen a piece of pipe, a fuse, and packs of firecrackers wrapped in nylon string at the defendant's residence. Pennington never saw an assembled bomb at the defendant's residence. No witness testified that he had seen the defendant assemble a bomb.
Chief Greenhouse testified that for approximately one month before this incident, he had been receiving information from a confidential informant concerning the defendant's manufacture of explosive devices. Chief Greenhouse testified that on July 18, 1983, the confidential informant told him that the defendant was making bombs and was planning to use them to destroy someone's car. Chief Greenhouse testified that he received the bag containing three bombs from Shane Desselle the next day.
The Chief testified that he notified the Louisiana State Police about the explosive devices on July 20, 1983, and that Trooper Stone, after examining the devices, determined that they were homemade bombs. Testimony revealed that Chief Greenhouse obtained a search warrant and that at approximately 2:50 P.M. on that date, he and other officers executed the warrant at 115 Overton Street. Chief Greenhouse testified that two green military-type time fuses, a zip-lock bag containing powder residue, and a PVC pipe were seized as a result of this search.
Trooper Stone stated that the time fuses seized in the defendant's residence were the same kind of fuses found in the three bombs that were given to Chief Greenhouse by Shane Desselle. He also testified that the three bombs contained the same type of powder that was found in the seized zip-lock bag. He further offered testimony that the PVC pipe could have been used for purposes of manufacturing a homemade bomb. Trooper Stone testified that the three devices that were turned over to the Chief by Shane Desselle were in fact bombs. Trooper Stone further noted that the defendant was not licensed to manufacture, possess or have under his control any bombs as required by La.R.S. 40:1471.1 et seq.
Through the testimony of Brenda Todd, a close friend of the defendant's girlfriend, the defendant attempted to establish that he did not live at the Overton Street address during July 1983. Ms. Todd testified that Tassin and his girlfriend lived continuously *344 with her and her husband between May and August 1983. She admitted that the defendant and his girlfriend lived at 115 Overton Street at one time. Other witnesses, including Mr. Pennington, Mr. Falls and Mr. Desselle, testified that, to their knowledge the defendant lived on Overton Street during the summer of 1983, and that they each visited him there regularly.
Where testimony is in direct conflict it is left to the trier of fact to determine credibility. The appellate court has only a cold record before it. Therefore, the reasonable credibility determinations of the trier of fact are entitled to great weight in the absence of an abuse of discretion. State v. MacDonald, 390 So.2d 1276 (La. 1980); State ex rel. Graffagnino v. King, supra; State v. Parkerson, 415 So.2d 187 (La.1982).
Viewing the evidence in the light most favorable to the prosecution, it appears that a rational trier of fact could have found the essential elements of La. R.S. 14:54.3 proven beyond a reasonable doubt. Trooper Stone testified that the defendant was not licensed to manufacture, possess or have under his control any bombs as is required by La.R.S. 40:1471.1 et seq. Trooper Stone further testified that the fuses found in the three bombs and in the defendant's residence could be used as a detonator or an initiator. Testimony revealed that the three devices turned over to Chief Greenhouse by Shane Desselle were in fact bombs. The testimony of Shane Desselle established that the defendant manufactured, possessed and had under his control these explosive devices.
Therefore, the prosecution proved beyond a reasonable doubt that the defendant was guilty of violating La.R.S. 14:54.3.
Accordingly, we affirm the conviction and sentence.
AFFIRMED.